SEALED

AO 106 (Rev. 04/10) Application for a Search Warrant

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

SEP 25 2017

JULIA C. DUDLEY, CLERK
BY: /s/ A. Blaylock
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Yahoo!, Inc.
701 First Avenue
Sunnyvale, California 94089

)
)
)
)
)
)

Case No. 1:17mj157

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Section 846 | Conspiracy to possess with intent to distribute and to distribute Buprenorphine, a Schedule III controlled substance. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Paul K. Gray, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/25/17

*Judge's signature*

City and state: Abingdon, VA

Pamela Meade Sargent, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with christina3victor@yahoo.com and tjaziz_christy@yahoo.com that are stored at premises controlled by Yahoo!, Inc., an e-mail provider in California that accepts service of legal process at 701 First Avenue, Sunnyvale, California 94089.

**ATTACHMENT B**

**Particular Things to be Seized**

**Information to be disclosed by Yahoo!, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all e-mails associated with the accounts from January 1, 2015 to the present, including stored or preserved copies of e-mails sent to and from the accounts, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP addresses used to register the accounts, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting,

log files, and means and source of payment (including any credit or bank account number);

    c.    The types of service utilized;

    d.    All records or other information stored at any time by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files;

    e.    All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken.

## AFFIDAVIT IN SUPPORT

## AN APPLICATION FOR A SEARCH WARRANT

I, Paul K. Gray, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1) I provide this affidavit in support of an application for a SEARCH WARRANT for information associated with a certain account that is stored at premises controlled by Yahoo!, Inc., an e-mail provider located at 701 First Avenue, Sunnyvale, California 94089. The information to be search is described in the following paragraphs and in Attachment A, incorporated herein by reference. This affidavit is made in support of an application for a SEARCH WARRANT under 18 U.S.C. Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo!, Inc. to disclose to the government copies of the information, including the content of communications, further described in Attachment B, incorporated herein by reference.

2) I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). On July 9, 1990, I entered on duty with the FBI; I have been continuously employed with the FBI since that time. During the period of 27 years I have been with the FBI, I have participated in numerous investigations involving violations of many Sections defined in Title 18 and Title 21 of the United States Code. Additionally, since February 2013, I have participated in numerous criminal investigations involving inmate offenders confined at the United States Bureau of Prisons institution: United States Penitentiary – Lee, located in Lee County, Virginia (USP-Lee). USP-Lee is located in the Western Judicial District of Virginia.

3) This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4) Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of Title 21 United States Code Section 846, conspiracy to possess with intent to distribute and to distribute buprenorphine, has been committed by Christy Santiago. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of this alleged crime.

### JURISDICTION

5) This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. Section 2711. 18 U.S.C. Sections 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a District Court of the United States......that – has jurisdiction over the offense being investigated." 18 U.S.C. Section 2711(3)(A)(i).

## PROBABLE CAUSE

6) The facts set forth herein are based upon my personal observations and investigation, as well as reports, records, and information provided to me by USP-Lee Special Investigative Services (SIS) officers and corrections officers, and other law enforcement. I do not purport to set forth all of my knowledge of the investigation into this matter, but set forth sufficient facts for this Court to find that probable cause exists to believe that Christy Santiago committed the alleged offense.

7) Victor Labron (Inmate# 25168-038) is an inmate serving a federal sentence within the U.S. Bureau of Prisons (US-BOP). In 2015, Labron was incarcerated in USP-Lee.

8) On the morning of 5/23/2015, Christy Santiago entered USP-Lee's front lobby at which time she signed the prison's "Inmate Visitor's Log" and provided Victor Labron's name and inmate number as the inmate she intended to visit. She also completed an official US-BOP "Notification to Visitor" form (BOP form AO224). Upon this form Santiago advised of the inmate she intended to visit as being Victor Labron, and she also provided his inmate number. Santiago completed the form by signing it and answering "no" to all of the questions relating to her possessing unauthorized items, to include narcotics. After completing this form, Santiago then proceeded to the prison's visitation room, at which time she visited with Labron.

9) At the end of the above visit in the early afternoon of the same date, Labron was escorted by USP-Lee personnel from the visitation room and ordered to submit to an electronic body scan. Upon his refusal, Labron was then escorted to USP-Lee's medical unit at which time he was placed into a "dry cell" (cell containing no toilet). USP-Lee SIS personnel advised me that on 5/25/2015, Labron defecated 2 rubber balloons which contained a total of 50 orange strips having "N8" markings on them. A subsequent field test of these strips conducted by the SIS yielded positive results for Opium Alkaloids. I subsequently accepted custody of these 50 strips and submitted them for further examination at the Drug

Enforcement Agency (DEA) Laboratory. A DEA Laboratory report provided to me in December, 2015 regarding the examination of these strips revealed the strips to be Buprenorphine (commonly referred to as Suboxoe) (a schedule III controlled substance).

10) USP-Lee inmates may be permitted to correspond with certain US-BOP approved individuals via an e-mail system strictly operated and maintained by the US-BOP via the prison's TRULINCS System. All inmate e-mail activity is stored and accessible to certain US-BOP personnel, to include SIS. Inmates have no expectation of privacy and their e-mail activity can be examined and monitored at any time by certain US-BOP personnel, without the consent of the respective inmate. Inmates also have no expectation of privacy regarding the phone calls they are allowed to make from USP-Lee, and these calls, which are recorded, can be examined and monitored at any time by certain US-BOP personnel, to include USP-Lee SIS personnel, without the consent of the respective inmate.

11) The experience and knowledge I have gained through investigating illegal prison narcotics cases has taught me that inmates will use coded language when e-mailing or phoning others to talk about narcotics.

12) Subsequent to the above USP-Lee visit on 5/23/2015 by Santiago and Labron, USP-Lee SIS personnel provided to me copies of electronic mail (e-mails) they had captured between Santiago and inmate Labron via the BOP's "Trulincs" inmate e-mail system. It was observed by me that Santiago communicated with Labron via her e-mail address christina3victor@yahoo.com. Several of these messages were highlighted by SIS and read by me. On 5/22/2015, the day before their visitation, some of Santiago and Labron's messges contained coded language through which they appear to be discussing how to pass the narcotics to each other at the prison. On 5/16/2015, a message from Labron to Santiago was captured in which Labron appears to be advising that at least "33" strips of Suboxone are needed.

13) On 5/10/2015, Santiago e-mailed Labron in reference to Suboxone strips in which she advised that she "got another message for another 50".

14) An interview of Santiago conducted by Atlanta, Georgia FBI personnel subsequent to her above Labron visit revealed that she has also communicated using the e-mail address tjaziz_christy@yahoo.com.

15) USP-Lee SIS personnel and I reviewed a telephone call between Santiago and Labron that had been recorded by USP-Lee's phone system on 6/06/2015. During this call, Labron appears to be telling Santiago that he had not concurred with his above body scan by stating he "denied it". In regards to this scan, Labron further stated that he "wasn't sure what it was gonna be like".

16) In September, 2015 I, along with USP-Lee SIS personnel, interviewed Labron at USP-Lee regarding his possession of the above Suboxone (Buprenorphine). During this interview, Labron advised that he had been in possession of the Suboxone prior to Santiago's visit with him at USP-Lee on 5/23/2015, and he had obtained the drugs from an unknown inmate in the prison's compound yard approximately 2 days prior to her visit. He advised that Santiago's visit was a "surprise visit", and when she arrived at USP-Lee, he went directly from the prison's yard to the visitation room. He further advised that he swallowed the drugs just prior to visiting with Santiago. Labron stated that he did not put the drugs in his cell prior to the visit because he did not want his cellmate to "get caught with them and get in trouble".

17) An experienced USP-Lee SIS official who assisted me with investigating this matter advised that "pat searches" of inmates are conducted in the prison each day throughout the prison, to include the yard and cellblocks. He advised that it is not normal for an inmate to carry balloons of drugs on their person around the prison yard and not put them in their cell. He advised that during his 16 years of working at the prison, both as a correctional officer and an SIS officer, there has never been a "pat search" of an inmate in which an inmate had balloons of drugs on their person, and balloons are usually received and swallowed by the inmate via visitation with civilian visitors prior to the inmate leaving the visitation room. He further advised that if drugs are found on an inmate's person, the drugs found have been downsized by the inmate from a balloon size to a smaller "sellable" weight.

18) I have learned that, in general, an e-mail that is sent to a Yahoo!, Inc. subscriber is stored in the subscriber's "mail box" on Yahoo!, Inc servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Yahoo!, Inc. servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Yahoo!, Inc.'s servers for a certain period of time.

## BACKGROUND CONCERNING E-MAIL

19) In my training and experience, I have learned that Yahoo!, Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. Yahoo!, Inc. allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with Yahoo!, Inc. During the registration process, Yahoo!, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Yahoo!, Inc. are likely to contain stored electronic communications including retrieved and unretrieved e-mail for Yahoo!, Inc. subscribers and information concerning subscribers and their use of Yahoo!, Inc. services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20) A Yahoo!, Inc. subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Yahoo!, Inc. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

21) In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

22) In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers

often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

23) In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

24) Based on the forgoing, I request that the Court issue the proposed SEARCH WARRANT. Because the SEARCH WARRANT will be served on Yahoo!, Inc. who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested SEARCH WARRANT at any time in the day or night.

Respectfully submitted,

*Paul K. Gray*
Paul K. Gray
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on
this 25th day of September, 2017

*Pamela Meade Sargent*
Pamela Sargent
UNITED STATES MAGISTRATE JUDGE